FILED
CLERK, U.S. DISTRICT COURT

JUN 17 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GABRIEL S. CASTELLANOS, | ) | NO. CV 11-1263-GHK(E) |
| Petitioner, | ) | |
| v. | ) | ORDER ADOPTING FINDINGS, |
| MIKE McDONALD, Warden, | ) | CONCLUSIONS AND RECOMMENDATIONS OF |
| Respondent. | ) | UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein, the attached Report and Recommendation of United States Magistrate Judge & petitioner's objections. The Court approves and adopts the Magistrate Judge's Report and Recommendation after having conducted a de novo review of that to which petitioner has objected.

IT IS ORDERED that Judgment be entered denying and dismissing the Petition with prejudice.

///
///
///
///

IT IS FURTHER ORDERED that the Clerk serve copies of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein on Petitioner and counsel for Respondent.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:     6/17    , 2011.

                         GEORGE H. KING
               UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL S. CASTELLANOS, ) | CV 11-1263-GHK(E) |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION OF |
| ) | |
| MIKE McDONALD, Warden, ) | UNITED STATES MAGISTRATE JUDGE |
| ) | |
| Respondent. ) | |
| ) | |
| _____) | |

This Report and Recommendation is submitted to the Honorable George H. King, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

PROCEEDINGS

Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on February 10, 2011. Respondent filed an Answer on March 29, 2011. Petitioner filed a Traverse on April 27, 2011.

**BACKGROUND**

A jury found Petitioner guilty of carjacking in violation of California Penal Code section 215(a) (Reporter's Transcript ["R.T."] 2403-04). Petitioner contends that the trial court materially erred by failing to instruct the jury on the defense of necessity. Respondent contends, inter alia, that this alleged error was harmless.

**SUMMARY OF TRIAL EVIDENCE**

I.  **Prosecution Evidence**

Andres Madera testified that on the night of July 20, 2008, he drove Joseph Bush to a liquor store (R.T. 902-03). Joseph Bush was the grey-haired father of a friend of Madera (R.T. 902-03, 905). Bush went into the liquor store while Madera waited in the car (R.T. 905).

Suddenly, Madera heard some curse words and Petitioner opened Madera's car door and started swinging at Madera (R.T. 905-07). Petitioner then grabbed Madera with both hands and yanked Madera out of the driver's seat of the car (R.T. 907-08). Petitioner got into Madera's car, put the car in gear, and floored it (R.T. 910). Madera ran and jumped onto the still open door, was dragged by the car for a time, but eventually let go after Petitioner kicked Madera (R.T. 910-11).

Deputy Sheriff Sam Dang testified that on the same evening he saw Petitioner driving Madera's car (R.T. 904, 938-42). After stopping at

1  an intersection, Petitioner screeched the tires and went forward at a
2  high rate of speed (R.T. 940). Deputy Dang and his partner, both of
3  whom were in uniform, made a U-turn and chased Petitioner (R.T. 940-
4  41, 1227). After Petitioner made a right turn, he stopped the car
5  abruptly, opened the car door, and ran into the area of some houses
6  (R.T. 941). Deputy Dang saw Petitioner hopping fences and shedding
7  the shirt Petitioner had been wearing (R.T. 942).

9  Deputy Dang further testified that, when he detained Petitioner
10 and asked Petitioner why Petitioner ran away from the car, Petitioner
11 answered that he was on parole and was driving with a suspended
12 license (R.T. 943). After Deputy Dang received a report concerning a
13 carjacking, he contacted the carjacking victim (Madera) by telephone
14 and asked Madera to go to a location to attempt to identify the car
15 and the suspect (R.T. 944-45). Apparently out of Petitioner's sight,
16 Madera positively identified Petitioner as the person who had
17 carjacked Madera (R.T. 945). When Deputy Dang asked Petitioner "where
18 he got the car from," Petitioner said that he had met a friend named
19 Robert Robinson, who reportedly had given the car to Petitioner (R.T.
20 948-49). Deputy Dang asked Petitioner if Petitioner had stolen the
21 vehicle and Petitioner said no (R.T. 949). Deputy Dang then informed
22 Petitioner that the owner of the vehicle was standing across the
23 street, whereupon Petitioner looked at Dang, looked over toward
24 Madera, smiled at Dang, and said "Ah, you got me." Id.

26 Deputy Sheriff Connie Delgado, who also spoke with Petitioner
27 after Petitioner was detained, testified that Petitioner told Delgado
28 the car belonged to a friend of Petitioner (R.T. 1225). Petitioner

told Delgado that Petitioner had been sitting in the passenger side of the car with the friend sitting in the driver's side, when the friend had started punching Petitioner (R.T. 1225-26). Petitioner told Deputy Delgado that Petitioner wanted the car parked down the street at the house of Petitioner's friend, Pedro Ferrera (R.T. 1225).

II.  **Defense Evidence**

Petitioner testified that on the evening in question he was coming out of the liquor store when Madera verbalized a gang-related challenge to Petitioner ("Hey, Ese . . . Where are you from?") (R.T. 971-78). Petitioner claimed that, based on events occurring in prison, the Mexican Mafia had put out a hit on Petitioner many years before (R.T. 977). Although Petitioner supposedly told Madera "I'm not from nowhere. I don't gang bang no more," Madera reportedly opened the car door (R.T. 978-79). Petitioner then approached the car with a couple of steps to see if Madera had a weapon (R.T. 979) (He did not). After Petitioner said "What's going on, man?" and "Are you all right?" Madera reportedly said "What's up? Why won't you tell me where you're from?" (R.T. 979).

Petitioner testified that he "just didn't really want to deal with it," and a fight ensued when Madera pushed the door and took a swing at Petitioner with Madera's hand (R.T. 979-80). After Petitioner hit Madera a couple times in the face, Petitioner grabbed Madera and threw him down (R.T. 981). Petitioner then reportedly panicked and jumped in the car to leave (R.T. 981). According to Petitioner, Madera never actually grabbed onto the car door and

1  Petitioner never pushed, kicked or hit Madera to get Madera off of the
2  car door (R.T. 981-82). Petitioner claimed he was frightened because
3  of the contract on his life allegedly put out by the Mexican Mafia
4  (R.T. 982-84).

6  Petitioner admitted he had known that deputies were following him
7  on the street (R.T. 1006). Petitioner took off his shirt during the
8  chase to try to mislead the deputies who were behind him (R.T. 1003-
9  04). Petitioner admitted he lied to Deputy Dang about the car, but
10 claimed he never told Deputy Dang "You got me." (R.T. 987, 995).
11 Petitioner admitted he falsely told Deputy Delgado that a friend of
12 Petitioner was in the driver's side of the car and that the friend
13 started hitting Petitioner after issuing a gang challenge (R.T. 1202-
14 05). Petitioner also admitted he told Deputy Delgado that he wanted
15 the car parked by the house of Petitioner's friend, Pedro Ferrera
16 (R.T. 1205-06). Petitioner claimed he told Deputy Delgado about the
17 hit supposedly put out on Petitioner's life (R.T. 1208).

19 In addition to his own testimony, Petitioner presented the
20 testimony of Deputy Sheriff Joseph Eiland and District Attorney
21 investigator Seth Fogel. Deputy Eiland testified that a yellow
22 wristband, such as the one worn by Petitioner, signifies a protective
23 custody inmate (R.T. 1215-16). Investigator Fogel testified that he
24 did not recall Madera claiming to have been kicked by Petitioner (R.T.
25 1222).
26 ///
27 ///
28 ///

1 | **DISCUSSION**

The Petition should be denied and dismissed with prejudice. As discussed below, any error in failing to instruct the jury on the defense of necessity was harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993) ("Brecht").

Brecht forbids a grant of habeas relief for a trial-type error unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." Id. at 637-38. Instructional errors, including the error alleged in the present case, are trial-type errors as to which the Brecht standard applies. See Hedgpeth v. Pulido, 555 U.S. 57 (2008); Clark v. Brown, 450 F.3d 898, 916 (9th Cir. 2006), cert. denied, 549 U.S. 1027 (2006); see also Flores v. Harrison, 2010 WL 5598524, at *17 (C.D. Cal. Dec. 15, 2010), adopted, 2011 WL 164635 (C.D. Cal. Jan. 18, 2011) (applying Brecht standard to find harmless a state court's omission of a necessity defense instruction).

The omission of an instruction on the defense of necessity in the present case had no substantial and injurious effect or influence on the jury's verdict. The defense of necessity inevitably would have failed unless the jury accepted Petitioner's version of the disputed events. The guilty verdict on the carjacking charge conclusively demonstrates that the jury did not accept Petitioner's version of the events. Under Petitioner's version, Petitioner formed his intent to take the car only _after_ applying force to Madera (R.T. 981). The trial court instructed the jury that "[Petitioner's] intent to take

1  the vehicle must have been formed before or during the time he used
2  force or fear.  If the defendant did not form this required intent
3  until after using the force or fear, then he did not commit
4  carjacking" (R.T. 1540; see also R.T. 2126).  Thus, by finding
5  Petitioner guilty of carjacking, the jury must have rejected
6  Petitioner's version of events.  See Weeks v. Angelone, 528 U.S. 225,
7  226 (2000) (the jury can be presumed to have followed their
8  instructions); Dubria v. Smith, 224 F.3d 995, 1001 (9th Cir. 2000),
9  cert. denied, 531 U.S. 1148 (2001) (same).

11      Furthermore, and in any event, the chances were virtually nil
12  that the jury would have found all of the required elements of the
13  defense of necessity had the jury been instructed on this defense.
14  Under California law, the defense of necessity requires that a
15  defendant show he or she "violated the law (1) to prevent a
16  significant and imminent evil, (2) with no reasonable legal
17  alternative, (3) without creating a greater danger than the one
18  avoided, (4) with a good faith belief that the criminal act was
19  necessary to prevent the greater harm, (5) with such belief being
20  objectively reasonable, and (6) under circumstances in which [he or]
21  she did not substantially contribute to the emergency."  People v.
22  Buena Vista Mines, Inc., 60 Cal. App. 4th 1198, 1202, 71 Cal. Rptr. 2d
23  101, 104 (1998) (citations and internal quotations omitted) (emphasis
24  added); accord Ford v. McDonald, 2010 WL 3929454, at *12 (C.D. Cal.
25  July 23, 2010).

27      In the present case, the "significant and imminent evil" was the
28  allegedly feared murder of Petitioner by Madera at the behest of the

Mexican Mafia. Under the circumstances presented at trial, there was virtually no chance the jury would have found "objectively reasonable" any supposed belief that the unarmed Madera was a Mexican Mafia hit man bent on murdering Petitioner bare-handed. Moreover, there is also virtually no chance that the jury would have found that Petitioner ever had any "good faith belief" that he needed to appropriate Madera's car to escape the supposedly murderous intentions of his unarmed assailant. A person with a good faith belief he had just escaped a hit man doubtlessly would have run toward rather than away from the uniformed deputies, and would not have lied to the deputies regarding how and why he had the car. Yet, Petitioner weaved for the deputies several conflicting stories regarding his flight and the origin of his possession of the car, though none of these stories comprehended the bizarre tale Petitioner spun at trial: that a stranger in a strange car had tried to murder him bare-handed in a liquor store parking lot at the behest of the Mexican Mafia.

In sum, the omission of the necessity defense instruction did not have any substantial and injurious effect or influence on the jury's verdict, given both the jury's demonstrable rejection of Petitioner's version of events and the extreme improbability the jury would have found the requisites for the defense on the evidence presented.

///
///
///
///
///
///

**CONCLUSION**

For all of the foregoing reasons,[1] IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying and dismissing the Petition with prejudice.

DATED: May 11, 2011.

                                           /s/
                              CHARLES F. EICK
                    UNITED STATES MAGISTRATE JUDGE

---

[1] The Petition must be denied because the alleged error was harmless under the Brecht standard, which establishes that Petitioner is not "in custody in violation of the Constitution or laws or treaties of the United States," within the meaning of 28 U.S.C. section 2254(a). The Court need not determine whether the Petition also must be denied based on the standard of review set forth in 28 U.S.C. section 2254(d). See Frantz v. Hazey, 533 F.3d 724, 736-37 (9th Cir. 2008) (en banc) (in conducting habeas review, a court may determine the issue of whether the petition satisfies section 2254(a) prior to, or in lieu of, applying the standard of review set forth in section 2254(d)).

1 | **NOTICE**

2 |     Reports and Recommendations are not appealable to the Court of
3 | Appeals, but may be subject to the right of any party to file
4 | objections as provided in the Local Rules Governing the Duties of
5 | Magistrate Judges and review by the District Judge whose initials
6 | appear in the docket number. No notice of appeal pursuant to the
7 | Federal Rules of Appellate Procedure should be filed until entry of
8 | the judgment of the District Court.

9 |     If the District Judge enters judgment adverse to Petitioner, the
10 | District Judge will, at the same time, issue or deny a certificate of
11 | appealability. Within twenty (20) days of the filing of this Report
12 | and Recommendation, the parties may file written arguments regarding
13 | whether a certificate of appealability should issue.